# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### DELTA DIVISION

**J.A.M. PROMOTIONS, INC.,**                                **PLAINTIFF**

**VS.**                             **CIVIL ACTION NO. 2:09CV016-P-S**

**TUNICA COUNTY ARENA AND**
**EXPOSITION CENTER, INC.;**
**TUNICA COUNTY, MISSISSIPPI; and**
**W.A. PECK BOUCHILLON,**                                **DEFENDANTS.**

## <u>FINAL JUDGMENT</u>

This matter comes before the court upon Defendant Tunica County's Motion for Summary judgment [101], Defendant W.A. Peck Bouchillon's Motion for Summary Judgment [103], Defendant Tunica County Arena and Exposition Center, Inc.'s Motion for Summary Judgment [106], Plaintiff's Motion to Continue Trial [127] and Plaintiff's Motion for Reconsideration [129]. After due consideration of the motions and the responses filed thereto, the court finds as follows, to-wit:

<u>A. Motions for Summary Judgment</u>

All of the plaintiff's claims (except the conversion claim) depend on the existence of a contract that was allegedly breached when J.A.M. Productions, Inc.'s 2007 contract with the Tunica County Arena and Exposition Center, Inc. was not renewed by the arena for 2008 or thereafter. The court concludes that there was no contract that was breached for 2008 and thereafter, but rather there was merely an agreement to enter a future contract by virtue of the plain language of the 2007 contract and Mississippi law regarding agreements to enter into future contracts.

Since there was no contract to breach for 2008 and thereafter, the plaintiff's claims against the arena and Tunica County for breach of contract, tortious breach of contract, and lack of good

1

faith and fair dealing with a contract and the plaintiff's claim against W.A. Peck Bouchillon in his individual capacity for malicious interference with a contract should all be dismissed with prejudice for failure to demonstrate through substantial evidence a genuine issue of material fact warranting at trial.

The plaintiff owns and operates a large go-kart race which was hosted at the arena since 2001. Each year the parties would negotiate and execute a contract and per the "Advance Payment/ Deposit Policy" clause, the parties automatically *contemplated* a renewal of the contract for the next year as long as the plaintiff allowed the arena to keep the $2,000.00 deposit. After the 2007 go-kart event, the arena director, Peck Bouchillon, sent the plaintiff a letter cancelling any further go-kart events by J.A.M. Productions, Inc. The plaintiff argues that the deposit clause entitles him to a perpetual spot at the Tunica Arena simply because he has left his deposit, which is why he claims lost profits damages not only for 2008, the first year he moved the go-kart race to Batesville, but also 2009, 2010, and presumably, 2011 and thereafter. The defendants argue that the operative clause only serves as a non-refundable deposit for the next year and that the actual contract for the next year has to be negotiated and signed before becoming valid.

The deposit policy in the 2007 contract states in pertinent part:

**ADVANCE PAYMENT/DEPOSIT POLICY**

User agrees to pay the following advance non-refundable payment/desposit schedule: USER may leave the deposit **from year to year to secure future dates** for which a contract **will** be issued for future dates/events at a later time. The deposit **will** secure a date or dates TBD but not necessarily the same dates covered under this agreement. A variety of reasons could result in the need to change the date(s) of the event. The ARENA **will** hold those dates agreed upon at the end of the current contract event but if at any time during the period **prior to a new contract being issued and signed** USER cancels the event for any reason the deposit will be forfeited in accordance to the same terms of this contract without penalty to either party.

The plaintiff argues that the term "from year to year to secure future dates" combined with use of the word "will" created the perpetual contract as long as the arena retained the plaintiff's deposit. However, the defendants correctly argue that the plain language of the deposit clause, especially the language "prior to a new contract being issued and signed" – read within the four corners of the contract – means that the $2,000.00 serves only as a non-refundable deposit signaling a non-binding intention that the parties will enter into further negotiations before they "issue" and "sign" the "new" contract for the next year.

"[I]t is a question of law for the court to determine whether a contract is ambiguous and, if not, enforce the contract as written." *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.*, 857 So.2d 748, 751-52 (Miss. 2003). Though it is true that when "the language of an otherwise enforceable contract is subject to more than one **fair** reading [thereby creating a legal ambiguity and] the reading applied will be the one most favorable to the non-drafting party," *One South Inc. v. Hollowell*, 963 So.2d 1156, 1162 (Miss. 2007) (emphasis added) the plaintiff's reading that the deposit clause entitles him to require the arena to perpetually host his go-kart event as long as the arena has the plaintiff's deposit from the prior year is not a fair or reasonable one. Accordingly, the court concludes that the 2007 contract by its own terms is not ambiguous and, as a matter of law, does not create a perpetual reservation for the plaintiff's event.

The deposit clause is an agreement to enter into a future contract and such agreements are unenforceable as a matter of Mississippi law unless all material and essential terms have been agreed upon. In this regard the Mississippi Supreme Court in *Duke v. Whatley* ruled:

> [U]nless an agreement to make a future contract is definite and certain upon all the subjects to be embraced, it is nugatory. To be enforceable, a contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as the result of future negotiations.

\*\*\*

If any essential term is left open to future consideration, there is no binding contract, and an agreement to reach an agreement imposes no obligation on the parties thereto.

580 So.2d 1267 (Miss. 1991). Similarly, the Fifth Circuit in *Betty Lee Shoes v. Karl's Shoe Stores, Ltd.,* cited with approval 1 Corbin, Contracts, §29, pp. 66-71:

It is quite possible for parties to make an enforceable contract binding them to prepare and execute a subsequent documentary agreement. In order that such may be the effect, it is necessary that agreement shall have been expressed on **all** essential terms that are to be incorporated in the document. That document is understood to be a mere memorial of the agreement already reached. If the document or contract that the parties agree to make is to contain **any** material terms that is not already agreed on, **no contract has yet been made**; and the so-called "contract to make a contract" is not a contract at all.

293 F.2d 429, 432 (5th Cir. 1961) (emphasis added).

From the plain language of the 2007 contract, even if the plaintiff left the deposit in consideration for the next year, "prior to a new contract being issued and signed," (as contemplated in the deposit clause) the parties had to select the specific dates and times of the events as evidenced by the first page of the 2007 contract and also had to negotiate fees for rentals, etc. for the next event year. Therefore it cannot be said that all of the essential and material terms were agreed upon thereby transmuting the agreement to enter a future contract into an enforceable contract in and of itself. Accordingly, there was no contract to breach.

It is axiomatic that to establish claims for breach of contract, tortious breach of contract, lack of good faith and fair dealing with a contract, and malicious interference with a contract, there must be a valid contract in the first instance. As explained above, there was no valid contract for 2008, 2009, 2010, etc. and therefore these claims must be dismissed with prejudice.

This leave the plaintiff's claim for conversion. In this regard, the Second Amended Complaint reads:

Following the cancellation of the event, the Defendant converted property to its own use by continuing to utilize pictures of Plaintiff's go-kart event in order to promote the Arena. This represents conversion of Plaintiff's personal property since it was an implied understanding that the Defendant could promote its Arena by utilizing pictures of Plaintiff's event as one of the events in the Arena only so long as Plaintiff was being allowed to utilize the Arena.

Second Amended Complaint at ¶10. The only discussion of the conversion claim in the plaintiff's briefs filed in opposition to the three motions for summary judgment can be found on page 25 and 26 of the plaintiff's response to the Tunica County Arena's motion for summary judgment. There is no law cited, nor is there evidence cited other than conclusory statements. To survive summary judgment on the conversion claim, the plaintiff must show a genuine issue of material fact warranting a trial and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978). The court finds that the plaintiff failed to meet this burden on the conversion claim.

B. Motion for Continuance and Motion for Reconsideration

On May 19, 2011 the court entered an Order granting the defendants' motion to strike and motion *in limine* to exclude reference during trial to the plaintiff's claims for lost profits, concluding that the plaintiff's evidence of lost profits was untimely. Thereafter, the plaintiff filed a motion to continue trial in order to allow development of this lost profits evidence. The plaintiff also filed a motion to reconsider the decision to strike.

Because the court has granted summary judgment on all of the plaintiff's claims, the motion to continue and motion for reconsideration are technically moot. However, for purposes of the record, had the court not granted summary judgment, the court would have granted the motion to continue and motion for reconsideration insofar as the plaintiff's three-months-late submission of Mr. McClanahan's profit and loss reports would have been allowed and the defendants would have

been given the opportunity to depose Mr. McClanahan and would have been given an appropriate period of time to consider hiring a rebutting expert.

Even though only an owner or employee of a business can testify as a lay witness regarding lost profits per Fed. R. Evid. 701 and *DIJO, Inc. v. Hilton Hotels Corp.*, 351F.3d 679 (5th Cir. 2003), the Fifth Circuit in *DIJO, Inc.* also cited with approval the Third Circuit's decision in *Teen-Ed, Inc. v. Kimball Internatinal, Inc.*, 620 F.2d 399 (3d Cir. 1980) which stands for the proposition that Mr. McClanahan, as the plaintiff's accountant, need not have been designated as an expert because he could provide lay witness testimony regarding profits and losses. More specifically, the Third Circuit held:

> The personal knowledge of appellant's balances sheets acquired by Zeitz as Teen-Ed's accountant was clearly sufficient under rule 602 to qualify him as a witness eligible under Rule 702 to testify to his [lay] opinion of how lost profits could be calculated and to inferences he could draw from his perception of Teen-Ed's books.

*Teen-Ed*, *Inc.*, 620 F.2d at 403. Furthermore, the Fifth Circuit in *DIJO, Inc.* observed that the accountant in *Teen-Ed*, *Inc.* was "situated in [a] position comparable to [an] in-house employee." *DIJO, Inc.*, 351F.3d at 686.

In other words, while the Fifth Circuit has "previously recognized that 'the [2000 amendment to Fed. R. Evid. 701 regarding lay witness testimony] did not place any restrictions on the preamendment practice of allowing business *owners or officers* to testify based on *particularlized knowledge* derived from their position," *DIJO, Inc.*, 351 F.3d at 685, the Fifth Circuit cited with approval the Third Circuit's conclusion that a party's accountant who is sufficiently familiar with a party's finances before and apart from litigation has the requisite "particularized knowledge" to provide lay witness testimony on profits and losses.

Because Mr. McClanahan could have testified as a lay witness, JAM Productions need not

have designated him as an expert, nor need they have produced a Fed. R. Civ. P. 26(a)(2) expert report.

Nevertheless, the profit and loss information attached to the plaintiff's response to the defendants' motions for summary judgment on March 16, 2011 was first disclosed three months after the discovery deadline expired on January 28, 2011. However, regarding Fed. R. Civ. P. 37(c) sanctions, the Fifth Circuit's decision in *Texas A&M Research Foundation v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) supports allowing a continuance to cure the error. In that case, the Fifth Circuit concluded that late disclosure was harmless because the subject witness had been designated properly as a witness before trial. In this case, Mr. McClanahan was in fact disclosed as a witness who had knowledge of the plaintiff's financial condition as far back as July 29, 2009 when the plaintiff answered the defendants' interrogatory number 5. Though the defendants argue that Mr. McClanahan was not designated as an expert, as the court explained above, he did not have to be. Accordingly, the court concludes that the prejudice to the defendants could have been cured with a continuance and an allowance of a reasonable time for the defendants to depose Mr. McClanahan and hire a rebuttal expert.

**IT IS THEREFORE ORDERED AND ADJUDGED** that:

(1) Defendant Tunica County's Motion for Summary judgment [101], Defendant W.A. Peck Bouchillon's Motion for Summary Judgment [103], and Defendant Tunica County Arena and Exposition Center, Inc.'s Motion for Summary Judgment [106] are **GRANTED**; therefore,

(2) All of the plaintiff's claims against all defendants are **DISMISSED WITH PREJUDICE**;

(3) Plaintiff's Motion to Continue Trial [127] and Plaintiff's Motion for Reconsideration

[129] are **DENIED AS MOOT**;

(4) This case is **CLOSED** with the parties to bear their own costs.

**SO ORDERED** this the 6th day of June, A.D., 2011.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE